# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 20-1501V
Filed: July 29, 2025

|  |  |
|---|---|
| AUDREY CHINNOCK,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Special Master Horner |

Jared Rose, Rose Law, LLP, Kansas City, MO, *for petitioner.*
Emilie Williams, U.S. Department of Justice, Washington, DC, *for respondent.*

### **DECISION ON ATTORNEYS' FEES AND COSTS**[1]

      On October 30, 2020, Audrey Chinnock filed a petition under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that she suffered neuromyelitis optica spectrum disorder ("NMOSD"), as a result of her December 6, 2017 influenza ("flu") vaccination. (ECF No. 1). On April 16, 2024, the parties filed a stipulation, which I adopted as my decision awarding compensation on the same day. (ECF Nos. 53 and 55).

      On November 18, 2024, petitioner filed a motion for attorneys' fees and costs. (ECF No. 59) ("Fees App."). Petitioner requests the following compensation: attorneys' fees and costs in the amount of $76,179.03, representing $46,598.60 in fees and

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioners have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

$29,585.43 in costs. Fees App. at 4-5. Petitioner warrants she did not personally incur any costs in pursuit of this claim. *Id.* at 4. On November 19, 2024, respondent filed a response to petitioner's motion. (ECF No. 60). Respondent argues that "[n]either the Vaccine Act nor Vaccine Rule 13 requires respondent to file a response to a request by a petitioner for an award of attorneys' fees and costs." *Id.* at 1. Respondent adds, however, that he "is satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case." *Id.* at 2. Respondent "respectfully requests that the Court exercise its discretion and determine a reasonable award for attorneys' fees and costs." *Id.* at 5. Petitioner did not file a reply.

This matter is now ripe for consideration.

**I.      Reasonable Attorneys' Fees and Costs**

The Vaccine Act permits an award of reasonable attorneys' fees and costs. § 15(e). The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1347 (Fed. Cir. 2008). This is a two-step process. *Id.* at 1347-48. First, a court determines an "initial estimate . . . by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings. *Id.* at 1348.

It is "well within the special master's discretion" to determine the reasonableness of fees. *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521–22 (Fed. Cir. 1993); *see also Hines v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (1991). ("[T]he reviewing court must grant the special master wide latitude in determining the reasonableness of both attorneys' fees and costs."). Applications for attorneys' fees must include contemporaneous and specific billing records that indicate the work performed and the number of hours spent on said work. *See Savin v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 313, 316–18 (2008). Such applications, however, should not include hours that are "'excessive, redundant, or otherwise unnecessary.'" *Saxton*, 3 F.3d at 1521 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

Reasonable hourly rates are determined by looking at the "prevailing market rate" in the relevant community. *See Blum*, 465 U.S. at 894-95. The "prevailing market rate" is akin to the rate "in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 895, n.11. Petitioners bear the burden of providing adequate evidence to prove that the requested hourly rate is reasonable. *Id.*

Special masters can reduce a fee request *sua sponte*, without providing petitioners notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (Fed. Cl. 2009). When determining the relevant fee reduction, special masters need not engage in a line-by-line analysis of petitioners' fee

application. *Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (Fed. Cl. 2011). Instead, they may rely on their experience with the Vaccine Program to determine the reasonable number of hours expended. *Wasson v. Sec'y of Dep't of Health & Human Servs.*, 24 Cl. Ct. 482, 484 (1991), *rev'd on other grounds and aff'd in relevant part*, 988 F.2d 131 (Fed. Cir. 1993). Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests . . . Vaccine program special masters are also entitled to use their prior experience in reviewing fee applications." *Saxton*, 3 F.3d at 1521.

### a. Hourly Rates

For attorneys receiving forum rates, the decision in *McCulloch v. Secretary of Health & Human Services* provides a further framework for consideration of appropriate ranges for attorneys' fees based upon the experience of the practicing attorney. No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has since updated the *McCulloch* rates, and the OSM Attorneys' Forum Hourly Rate Fee Schedules through 2025 can be accessed online.[3] Mr. Rose, who is located in Kansas City, Missouri will be awarded forum rates in accordance with *McCulloch* and the OSM Attorneys' Forum Hourly Rate Fee Schedules.

Petitioner requests the following rates of compensation for her attorney, Mr. Jared Rose: $317.00 per hour for work performed in 2018, $324.00 per hour for work performed in 2019, $338.00 per hour for work performed in 2020, $355.00 per hour for work performed in 2021, $366.00 per hour for work performed in 2022, $386.00 per hour for work performed in 2023, and $407.00 per hour for work performed in 2024. I find that these rates are reasonable for Mr. Rose's experience and the work he performed in this case; therefore, I will award the rates as requested.

### b. Hours Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton*, 3 F.3d at 1521. While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health & Human Servs.*, No. 08–243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g.*, *McCulloch*, 2015 WL 5634323, at *26.

Upon review, the overall number of hours billed appears to be largely reasonable. I have reviewed the billing entries and find that they adequately describe the work done on the case and the amount of time spent on that work. However, a small reduction is required. It appears that Mr. Rose billed for time performing tasks which are traditionally

---

[3] OSM Attorneys' Forum Hourly Rate Fee Schedules, https://www.uscfc.uscourts.gov/osm-attorneys-forum-hourly-rate-fee-schedules (last visited July 28, 2025).

handled by paralegals, mostly for acquiring medical records. *See* Fees App. Ex. 1 at 1-4, 7-13. "Tasks that can be completed by a paralegal or a legal assistant should not be billed at an attorney's rate." *Riggins v. Sec'y of Health & Human Servs.*, No. 99-382V, 2009 WL 3319818, at *21 (Fed. Cl. Spec. Mstr. June 15, 2009). "[T]he rate at which such work is compensated turns not on who ultimately performed the task but instead turns on the nature of the task performed." *Doe/11 v. Sec'y of Health & Human Servs.*, No. XX-XXXXV, 2010 WL 529425, at *9 (Fed. Cl. Spec. Mstr. Jan. 29, 2010). Petitioner's counsel billed approximately 8.3 hours for these tasks from 2018, through 2021, totaling $2,867.80. This amount will be reduced by 50%, resulting in a reduction of **$1,433.90**. Accordingly, Petitioner is entitled to final attorneys' fees in the amount of $45,159.70.

### c. Attorneys' Costs

Like attorneys' fees, a request for reimbursement of attorneys' costs must be reasonable. *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (Fed. Cl. 1992). Petitioner requests a total of $29,585.43 in attorneys' costs. Fees App. at 4-5. These costs are comprised of acquisition of medical records, legal research article, the Court's filing fee, and expert fees.

Petitioner requests an hourly rate of $600.00 per hour for 46.5 hours, totaling $27,900, for expert services provided by of neurologist, Robert J. Adams, MS, MD. Fees App. Ex. 4. According to his *curriculum vitae*, Dr. Adams received his medical degree with a distinction in neurophysiology from the University of Arkansas for Medical Sciences in 1980, he completed his internship at the same institution in 1981, and then completed a three-year residency at the Medical College of Georgia, Department of Neurology, in 1985. Fees App. Ex. 5 at 1. He is licensed to practice medicine in Georgia and South Carolina, and is certified by the American Board of Psychiatry and Neurology, with a subspecialty in Vascular Neurology. *Id*. Dr. Adams has held various academic and faculty positions since 1981, and at the time of his expert reports, he was a consultant with the Piedmont Augusta Hospital (formerly University Hospital), a consultant at the Augusta VA Medical Center, and faculty at the Medical University of South Carolina ("MUSC"). *Id*. at 1-2. His current faculty positions at MUSC include Professor of Neuroscience, University Eminent Scholar, Director of South Carolina Center of Economic Excellence in Stroke, and Full Member of the Graduate Faculty. *Id*. at 2. Throughout his career, Dr. Adams has participated in multiple intramural committees, extramural activities, editorial boards, was a scientific publication reviewer, received multiple grants and honors, is a member of several scientific and professional societies, and has authored numerous abstracts, articles, and publications. *Id*. at 2-35.

I acknowledge Dr. Adams' significant experience as a neurologist and his qualifications to serve as an expert in this case; however, I find that petitioner has not met her burden to establish that a rate of $600.00 per hour for Dr. Adams' work is reasonable. This appears to be Dr. Adams' first case in the Vaccine Program. Other neurologists with more extensive experience have typically awarded less for their Vaccine Program work. For instance, Dr. Lawrence Steinman, a Stanford University

neurology professor with additional specialty in neuroimmunology, with more than forty years of experience as a physician, and extensive experience in the Program, who is based in the larger geographical forum San Francisco, has typically been awarded an hourly rate of $500.00 to $550.00 for his Program work. *See, e.g.*, *Langley v. Sec'y of Health & Human Servs.*, No. 17-837V, 2023 WL 7221461, at *3 (Fed. Cl. Spec. Mstr. Sept. 7, 2023) (granting $500.00 per hour for Dr. Steinman's work); *Morrison v. Sec'y of Health & Human Servs.*, No. 18-386V, 2023 WL 1873254, at *7 (Fed. Cl. Spec. Mstr. Feb. 10, 2023) (granting $550.00 per hour for work Dr. Steinman performed in 2021 and 2022). While Dr. Adams' credentials are impressive, they do not reflect that a rate of $600.00 per hour is warranted. In fact, while "several neurologists have previously been awarded $500.00 per hour, such a rate is typically reserved for experts who not only possess top of the line credentials, but also have extensive Vaccine Program experience." *Finkelstein v. Sec'y of Health & Human Servs.*, No. 19-212V, 2022 WL 3135918, at *2–3 (Fed. Cl. Spec. Mstr. July 1, 2022) (reducing an expert neurologist's hourly rate from $500.00 to $450.00 based on "his credentials and the quality of his work product[,]" as well as his lack of experience in the Program). Even neurologists with extensive Program experience and noteworthy credentials, such as Dr. Carlo Tornatore, whose experience includes a professorship of neurology at Georgetown University Medical Center and a vice chairmanship of MedStar Georgetown University Hospital's neurology department, are typically awarded less than $500.00 per hour. *See, e.g.*, *Abbott v. Sec'y of Health & Human Servs.*, No. 14-907V, 2020 WL 8766524, at *5 (Fed. Cl. Spec. Mstr. Dec. 4, 2020) (noting that Dr. Tornatore "typically receives $400 per hour"); *Jones v. Sec'y of Health & Human Servs.*, No. 15-1239V, 2019 WL 7496602, at *4–5 (Fed. Cl. Spec. Mstr. Sept. 20, 2019) (reducing Dr. Tornatore's hourly rate from $500.00 per hour to $400.00 per hour for work performed from 2015 to 2017 and to $450.00 per hour for work performed in 2018 "in recognition of the overall work he has provided for the Vaccine Program[ ]" and his work in the case).

The evidence submitted demonstrates that Dr. Adams was well-qualified to opine in this case; however, his experience does not warrant an elevated rate, or the rates typically reserved for experts with extraordinary credentials and experience. Based on the evidence submitted and the rates awarded to other neurologists in the Vaccine Program, I find that a reasonable hourly rate for Dr. Adams' work in this case is $500.00 per hour. Accordingly, I will reduce Petitioner's reward by **$4,650.00**.

I find that the remainder of the costs have been supported with the necessary documentation and are reasonable. Accordingly, petitioner is entitled to final attorneys' fees in the amount of $24,935.43.

## II.     Conclusion

In accordance with the Vaccine Act, 42 U.S.C. § 300aa-15(e) (2012), I have reviewed the billing records and costs in this case and finds that petitioner's request for fees and costs is reasonable. I find it reasonable to compensate petitioner and his counsel as follows: **a lump sum in the amount of $70,095.13, representing reimbursement for**

**petitioner's attorneys' fees and costs, to be paid through an ACH deposit to petitioner's counsel's IOLTA account for prompt disbursement.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court shall enter judgment in accordance herewith.[4]

**IT IS SO ORDERED.**

<u>s/Daniel T. Horner</u>
Daniel T. Horner
Special Master

---

[4] Entry of judgment can be expedited by each party's filing of a notice renouncing the right to seek review. Vaccine Rule 11(a).